IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
PAULA VERMA,                        )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   1:22-CV-00327
                                    )
WALMART, INC., WAL-MART REAL        )
ESTATE BUSINESS TRUST, WAL-         )
MART TRS, LLC, WAL-MART STORES      )
EAST, LP, and WAL-MART REALTY       )
COMPANY,                            )
                                    )
            Defendants.             )
```

## MEMORANDUM ORDER

Before the court in this personal injury action are two pretrial motions in limine by Defendant Walmart, Inc. and its associated entities: a motion to exclude the testimony of Plaintiff Paula Verma's treating physician on the issue of medical causation;[1] and a motion to exclude or limit evidence related to Verma's medical invoices. (Docs. 30, 44, and 45.) Verma opposes both motions. (Docs. 41 and 46.) For the reasons set forth below, Defendants' motion to exclude Dr. O'Gara from opining on medical causation will be denied, and their motion to exclude or limit

---

[1] The court previously denied this motion without prejudice at the September 28, 2023 pretrial conference. (Minute Entry 09/28/2023.) At that time, only the transcript from the first deposition of Dr. O'Gara was available. (Doc. 31 at 2-7.) The court considers Defendants' current motion in limine to the extent it raises arguments arising from a subsequent deposition of Dr. O'Gara, the transcript of which only recently became available. (See Doc. 45 at 2-6.)

evidence of the medical bills will be granted in part and denied in part.

## I. BACKGROUND

This case arises out of an accident at Walmart Store #1613 in High Point, North Carolina, on May 6, 2019. (Doc. 2 ¶¶ 8-11; Doc. 31 at 1.) On that day, a Wal-Mart employee driving a motorized shopping cart collection machine struck Verma's parked vehicle. (Doc. 2 ¶¶ 11-19; Doc. 31 at 1-2.) Verma alleges that this exacerbated her previously-existing degenerative spinal conditions, leading to pain and suffering and more than $400,000.00 in medical expenses. Verma alleges she required a trip to the emergency room, two surgeries (a posterior cervical fusion surgery October 3, 2019, and a revision surgery on June 15, 2020), and post-operative treatment at skilled nursing facilities. (See Doc. 45.)

Defendants challenge the claim that the collision caused Verma's medical injuries and damages. They seek to exclude the testimony of Verma's surgeon and treating physician, Tadgh O'Gara, M.D., that the accident caused Verma's injuries and that her medical bills relate reasonably to her treatment. (Doc. 30.) Even if some medical bills relate to treatment, Defendants further contend, they must be limited to those admissible under North Carolina Rule of Evidence 414. (Id.) Defendants base their challenges on Dr. O'Gara's testimony from a March 6, 2023

2

deposition and a subsequent August 25, 2023 *de bene esse* deposition.[2] (Docs. 31, 44, and 45.)

The court heard argument on the pending motions at a September 28, 2023 pretrial conference and denied Defendants' motion to preclude Dr. O'Gara from offering his opinion on medical causation generally but permitted Defendants to renew their motion once Dr. O'Gara's second deposition transcript was made available. (Minute Entry 09/28/2023.) The court reserved on the second motion and requested further briefing. The parties have since filed supplemental briefing, with a copy of Dr. O'Gara's new deposition transcript, and both motions are therefore ready for decision.

## II. ANALYSIS

### A. Medical Causation

Defendants argue that Verma's treating physician, Dr. O'Gara, should be precluded from testifying that the accident caused Verma's injuries (by exacerbating her pre-existing spinal condition) because the grounds of his opinion do not meet the standard of reliability required by Federal Rule of Evidence 702. (See Doc. 30 at 1.) According to Defendants, Dr. O'Gara's testimony is not "based upon 'scientific, technical, or other

---

[2] Local Civil Rule 7.3(e) requires parties to attach "affidavits, parts of depositions, and other pertinent documents" not appearing in the record to support their motions. (Emphasis added.) Defendants here have attached the entirety of both of Dr. O'Gara's deposition transcripts. It is not the court's duty to read portions of deposition transcripts not specifically cited by a party in briefing.

3

specialized knowledge,'" as required by Rule 702. (Doc. 31 at 6 (quoting Fed. R. Evid. 702).) Instead, they maintain, Dr. O'Gara is admittedly a patient advocate whose testimony had "no basis in facts, data, reliable principles or methods" but relies instead on Verma's self-report of her pain and the accident, which the doctor accepts. (Doc. 45 at 3.) Consequently, they contend, it lacks an objective analysis and is not reliable. (Id. at 5-6.)

Rule 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if (1) the expert's specialized knowledge will help the trier of fact to understand the evidence; (2) the testimony is based on sufficient facts or data; (3) the testimony is the result of reliable principles and methods; and (4) the expert reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702(a)-(d). The "proponent has the burden of establishing that the admissibility requirements are met by a preponderance of the evidence" pursuant to Federal Rule of Civil Procedure 104(a). See Fed. R. Evid. 702 Advisory Committee notes to 2000 amendment; Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993); Sardis v. Overhead Door Corp., 10 F.4th 268, 283 (4th Cir. 2021) (noting that the Federal Rule of Evidence Advisory Committee has recently stated that judges must "apply the preponderance standard of admissibility to Rule 702's requirements") (quoting Advisory Comm. on Evidence Rules, Agenda

4

for Committee Meeting 17 (Apr. 30, 2021)). Proponents need not show by a preponderance that their experts are correct, but rather that "their opinions are reliable." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994); see also Daubert, 509 U.S. at 589 (1993). Reliability is a "flexible" inquiry focused on "the principles and methodology" used by the expert to ensure that the opinion is "based on scientific, technical, or other specialized knowledge and not on belief or speculation." Daubert, 509 U.S. at 594-95; Oglesby v. Gen. Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999).

Defendants' argument that Dr. O'Gara does not meet the standard for reliability is unconvincing. For one thing, Defendants mischaracterize Dr. O'Gara's opinion testimony as relying solely on his patient's reports (see Doc. 45 at 5 (characterizing Dr. O'Gara as rely on "[Verma's] say-so alone")) when in fact his deposition testimony explains that he came to his conclusion on causation by listening to Verma's account and appraising her diagnostic imaging in coordination with his medical knowledge (see Doc. 45 at 38 (describing how his opinion on causation was formed based on the patient's testimony as well as MRI imaging consistent with her described symptoms)). Dr. O'Gara's testimony cannot fairly be described as being "almost completely bereft of any facts or data," as Defendants suggest. (Doc. 31 at 6.)

5

Beyond that, Dr. O'Gara's reliance on Verma's description of her condition is not fatal to the admissibility of his testimony, as Defendants contend. Dr. O'Gara's second deposition establishes that reliance on patient descriptions is considered a standard, reputable method within his field for making medical determinations as to injury and causation. (See id. at 40 ("[Patients'] subjective reports of symptoms is probably 85 to 90 percent of the – of what we [treating physicians] rely on for our diagnosis. And that's across the board in my field.").) Moreover, as this court stated at the pretrial conference, courts have routinely held that physician reliance on patient descriptions is a practice commonly used by physicians to treat patients and meets the Daubert standard. See, e.g., Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1020-1021 (7th Cir. 2000) ("Here, a physician employed the accepted diagnostic tool of examination accompanied by physical history as related by the patient. In this case, this methodology was acceptable under the gatekeeping requirements of Daubert."). Because Dr. O'Gara relied on a combination of objective medical evidence, such as Verma's MRI, as well as her self-report of her injuries and the accident to conclude that the accident caused Verma's medical injuries by aggravating a pre-existing spinal condition, he has provided a predicate showing of reliability, and any challenges to Dr. O'Gara's reliance on Verma's self-report will affect the weight of the evidence rather than its

6

admissibility.  This is especially so since the deposition reflects that Dr. O'Gara maintains his opinions even in light of having viewed a video of the accident captured by a Wal-Mart parking lot camera.[3]

Therefore, Defendants' motion to preclude Dr. O'Gara's opinion that the accident caused Verma's current injuries is denied.

### B. Billing for Medical Expenses

Defendants also contend that evidence pertaining to Verma's medical invoices should be excluded for lack of proper foundation. (See Doc. 30 at 1).  Defendants make two arguments:  First, they argue that North Carolina Rule of Evidence 414 precludes Verma from offering evidence of medical bills in excess of amounts actually paid or actually necessary to satisfy unpaid bills (see Doc. 44 at 1-3; Doc. 45 at 11).  Second, they argue that Dr. O'Gara cannot lay a proper foundation for admitting the invoices.  (See Doc. 31 at 7; Doc. 45 at 6-11.)  Each argument is addressed in turn.

### 1. North Carolina Rule of Evidence 414

North Carolina Rule of Evidence 414 is codified in North Carolina General Statute § 8C-1, and provides:

---

[3] The court notes the apparent inconsistency in Defendants' motion in that Defendants' proffered causation expert, also a physician, is being offered to testify that the accident did not cause Verma's injuries based in part on his medical knowledge and his viewing of the same video of the accident.  (See Doc. 33-1.)

7

> Evidence offered to prove past medical expenses shall be limited to evidence of the amounts actually paid to satisfy the bills that have been satisfied, regardless of the source of payment, and evidence of the amounts actually necessary to satisfy the bills that have been incurred but not yet satisfied. This rule does not impose upon any party an affirmative duty to seek a reduction in billed charges to which the party is not contractually entitled.

N.C. Gen. Stat. § 8C-1, Rule 414. Defendants argue that, although a state rule of evidence, this provision is substantive because it impacts litigation outcomes. (See Doc. 44 at 2-3.) Accordingly, Defendants contend, a federal court is required to apply the rule, which they say will limit Verma to offering evidence of those bills not subject to a Medicare write-down. (See id.)

Verma contends that Rule 414 is a state procedural law that does not apply in federal court. (Doc. 46 at 4-6.) As an evidentiary rule that does not appear to be bound up in the public policy of the state, she argues, it must yield to the Federal Rules of Evidence, thus permitting her to proceed with evidence of the full amount of her claims. (See id. at 5-6.)

For federal courts exercising diversity jurisdiction involving state law claims, such as this, "the 'general rule' is that federal courts apply state substantive law and federal procedural law." Cisson v. C.R. Bard, Inc., 810 F.3d 913, 919 n.1 (4th Cir. 2016); see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72-73 (1938); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (holding that federal courts are "bound to apply state law"

8

to pendant claims). The substance-procedure distinction, born out of Erie and its progeny, hinges on whether "application [of the state law rule] would give rise to a different result, [or] the so-called 'outcome-determinative' rule." Szantay v. Beech Aircraft Corp., 349 F.2d 60, 63 (4th Cir. 1965); see Hanna v. Plumer, 380 U.S. 460 (1965); Guaranty Trust Co. v. York, 326 U.S. 99 (1945). In other words, federal courts must ask whether application of the law would "significantly affect the result" of the litigation when determining whether or not to apply the law at hand. Hanna, 380 U.S. at 466. Where there is no federal law that conflicts with application of the state law rule, as Verma admits is the case here (see Doc. 46 at 6 ("Notably, there is nothing akin to Rule 414 in the Federal Rules of Evidence.")), federal courts must probe into whether the law fits with the "twin aims" of Erie – "discouragement of forum-shopping and avoidance of inequitable administration of the laws." Hanna, 380 U.S. at 468. If it does, then the state law is substantive and federal courts are bound to apply the rule.

Few cases have considered whether Rule 414 applies in federal court, but those that have done so have found it is substantive. Courts in the Western District of North Carolina have twice considered the issue: once in a footnote, see Sigmon v. State Farm Mut. Auto Ins. Co., No. 5:17-CV-00225-KDB-DCK, 2019 WL 7940194 at *1 n.1 (W.D.N.C. Nov. 14, 2019), and once more squarely as a

9

preliminary matter to decision, see Carmely v. United States, 3:20-cv-00689-RJC-DCK, 2023 WL 2314873 at *1 (W.D.N.C. Mar. 1, 2023). In both cases, the courts determined that Rule 414 was substantive, relying on case history from North Carolina state courts indicating that Rule 414 abrogated the collateral source rule, which itself was held to be substantive in nature. See Sigmon, 2019 WL 7940194 at *1 n.1 (citing Hairston v. Harward, 821 S.E.2d 384, 392 (N.C. 2018) (stating that the North Carolina Supreme Court has treated the collateral source rule as a substantive rule of law concerning damages); Nicholson v. Thom, 763 S.E.2d 772, 789 n.19 (N.C. App. 2014) ("In 2011, the collateral source rule was abrogated by Rule 414 of the North Carolina Rules of Evidence with regard to evidence of past medical expenses.")); Carmely, 2023 WL 2314873 at *1 (citing the same).

This court agrees and finds that Rule 414 is substantive in nature. As Sigmon and Carmely note, Rule 414's abrogation of North Carolina's collateral source rule is strong evidence that it is substantive. Collateral source rules have been held to apply in federal court throughout the United States - despite being evidentiary rules and thus presumed procedural in nature - because they affect the presentation of damages, which has long been understood to be a substantive issue. See, e.g., Southern v. Plumb Tools, Div. of O'Ames Corp., 696 F.2d 1321 (11th Cir. 1983) (holding Alabama's collateral source rule to be substantive);

10

Mitchell v. Hayes, 72 F. Supp. 2d 635 (W.D. Va. 1999) (holding Virginia's collateral source rule to be substantive); Stanley v. Bertram-Trojan, Inc., 868 F. Supp. 541 (S.D.N.Y. 1994) (holding New York's collateral source rule to be substantive); see generally 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice And Procedure: Jurisdiction And Related Matters: Erie Doctrine § 4512 (2d Ed. 1996) (distinguishing the collateral source rule as "more properly regarded as [a] rule[] of substantive law within the meaning of the Erie doctrine since [it is] part of the rights and obligations of state law" despite being a rule that "results in the exclusion of evidence"). In fact, the North Carolina Supreme Court has explicitly recognized the substantive nature of North Carolina's collateral source rule. See Hairston, 821 S.E.2d at 391. As Rule 414 replaced North Carolina's collateral source rule in cases of medical bills, then, its substantive nature must be recognized.

In addition, it is clear that failing to apply Rule 414 in the federal forum would thwart the twin aims of Erie. See Hanna, 380 U.S. at 468. Were this court to hold that Rule 414 did not apply, defendants in a federal forum based on the parties' diversity of citizenship may face liability for damages well beyond what they would face in the state forum. This would incentivize plaintiffs to file in federal court to avoid the state damages limitation and discourage defendants from exercising their right

11

to remove cases to federal court by exposing them to greater damage claims. Such is the case here. Defendants proffer that, without application of Rule 414, they are exposed to medical damages that are multiples of what they would face in state court. This would be an inequitable substantive result based merely on the forum, which is unacceptable under Erie and its progeny.

Verma cites Pledger v. Lynch, 5 F.4th 511, 523 (4th Cir. 2021), for the proposition that rules like Rule 414 that contain "state law preconditions" are procedural and thus not applicable in federal court. (Doc. 46 at 5.) However, that case involved a state law pre-filing requirement for a medical malpractice lawsuit that conflicted with the pleading requirements set out in the Federal Rules of Civil Procedure. It, and the other cases cited by Verma,[4] each deal with rules that directly conflict with some other freestanding federal rule, necessitating analysis under a different line of Erie cases stemming from the Supreme Court's precedent in Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., 559 U.S. 393 (2010). That is not the case here, where there is no conflict with a coordinate federal rule such that analysis under the Hanna v. Plumer line is more appropriate.

---

[4] E.g., Barnes v. Sun Chem. Corp., 164 F. Supp. 3d 994, 1011 (E.D. Mich. 2016) (finding Michigan Court Rule on offers of judgment procedural and in conflict with Federal Rule of Civil Procedure 68); Exxon Corp. v. Burglin, 42 F.3d 948, 950 (5th Cir. 1995) (finding Alaska Rule 508 addressing recovery of attorneys' fees procedural and in conflict with Federal Rule of Appellate Procedure 38).

12

The court therefore grants Defendants' motion in limine insofar as it seeks to preclude Verma from presenting evidence of medical expenses prohibited by North Carolina Rule of Evidence 414.[5]

### 2. Evidence Related to Medical Invoices

Defendants also contest the admissibility of Verma's medical bills as presented by Dr. O'Gara in his second deposition, arguing that he fails to lay a sufficient foundation for their admission. (See Doc. 45 at 6-11.) Defendants contend that Dr. O'Gara failed to establish his competency to testify to the bills, let alone establish their reasonableness and medical necessity. (See id. at 9-11.) Defendants seek to exclude both the medical bills and Dr. O'Gara's testimony pertaining to them. (See id.)

Verma insists instead that Dr. O'Gara is competent to testify on the issue of medical billing and that his testimony lays a sufficient foundation for their introduction into evidence. (Id. at 2-4; see Doc. 41 at 4-5.) She maintains that Dr. O'Gara's testimony about the treatment he provided, its necessity, and the billing attendant to it is sufficient to establish grounds to admit the invoices into evidence. (See Doc. 46 at 3-4.) She concludes that Defendants' challenges raise issues for cross-examination,

---

[5] Defendants have not articulated what amounts they claim are within the scope of Rule 414 as opposed to those that are not because they relate to other damages claims.

13

which Defendants declined to conduct at Dr. O'Gara's depositions. (See Doc. 41 at 4-5.)

"Medical bills are admissible where lay and medical testimony of causation is provided." Smith v. Pass, 382 S.E.2d 781, 788 (N.C. App. 1989). "[T]he treatment for which charges are incurred must be reasonably necessary, and the charges must be reasonable in amount." Chamberlain v. Thames, 509 S.E.2d 443, 450 (N.C. App. 1998). "[I]t remains entirely within the province of the jury to determine whether certain medical treatment was reasonably necessary." Jacobsen v. McMillan, 476 S.E.2d 368, 372 (N.C. App. 1996). Thus, where a physician testifies that he believes all of his charges were "reasonable and necessary based on treatment rendered" or "reasonable and customary" for the services rendered for treatment following an accident, there is a sufficient evidentiary basis to permit the jury to decide the issues of damages. Osetek v. Jeremiah, 621 S.E.2d 202, 205 (N.C. App. 2005).

After a review of Dr. O'Gara's deposition testimony, it is apparent that he meets the threshold for admission. For example, in his second deposition, Dr. O'Gara sequentially walked through Verma's medical treatment from the time of the accident, testifying to her emergency department visit, her initial consultation with his nurse practitioner, her appointment with him and her subsequent MRI, her two surgeries, and her inpatient recovery stays at skilled

14

nursing facilities.  (See Doc. 45 at 21-25.)  He then correlated the bills to that course of treatment, stating:

> This is an emergency visit.  Outpatient visit; this may be mine.  I'm not sure.  But there is an outpatient visit, which might have been my nurse practitioner.  This may be mine.  This is for an MRI that was done.  MRI.  This is for my office visit.  This is for what sounds like the anesthesia from the surgery.  And this is the surgical bill.

(Id. at 26.)  This testimony is sufficient to lay a predicate foundation that the invoices relate to Verma's treatment.  Moreover, under North Carolina law, medical invoices offered by the injured party are presumptively reasonable.  N.C. Gen Stat. § 8-58.1.[6]  And Dr. O'Gara himself offered his opinion that the medical bills were reasonable, bolstering that presumption.  (Doc. 45 at 26-28.)  Consequently, Defendants' motion in limine to preclude evidence of medical billing on these grounds is denied.

### III.  CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion in limine to preclude Dr. O'Gara from opining on medical causation (Doc. 30) is

---

[6] Defendants emphasize, but do not argue, that § 8-58.1 applies only where the injured party introduces the medical charges at issue. (See Doc. 45 at 10 ("[I]n North Carolina there is a statutory presumption that if the injured party gives evidence regarding the amount paid or required to be paid in full satisfaction of such charges there is a rebuttable presumption of the reasonableness of the amount paid.") (emphasis in original) (internal quotations omitted).)  Here, Verma represents that she intends to testify in addition to Dr. O'Gara as to her expenses.  (See Doc. 29 at 2; Doc. 46 at 4 ("Plaintiff can and will provide testimony regarding the medical expenses she incurred.").)

15

DENIED without prejudice to Defendants raising an objection to specific testimony at trial by Dr. Tadgh O'Gara not addressed here.

IT IS FURTHER ORDERED that Defendants' motion in limine related to medical billing (Doc. 30) is GRANTED IN PART - in that evidence of Verma's medical bills shall be governed by the scope of North Carolina Rule of Evidence 414 - and is otherwise DENIED.

/s/   Thomas D. Schroeder<br>United States District Judge

October 5, 2023

16

Case 1:22-cv-00327-TDS-JEP   Document 50   Filed 10/05/23   Page 16 of 16